UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMORNRIT SIRIPAN,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>TONYA ANDREWS, et al.,<br><br>　　　　　Respondents. | No. 1:25-cv-01933-DC-CKD (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order.

## BACKGROUND

**A.     Factual Background**

Petitioner is a 73-year-old man who was born in Thailand. (Doc. No. 1 at ¶ 1.) Petitioner entered the United States in 1969 on a student visa, when he was around 16 or 17 years old. (*Id.* at ¶ 2.) He later became a lawful permanent resident based on his marriage to a U.S. citizen. (*Id.* at ¶ 21.)

In 1988, Petitioner was convicted in Los Angeles County of oral copulation of a person

1

1  under fourteen years of age, rape by the use of drugs, rape by force, and kidnapping in violation
2  of California Penal Code §§ 288a(c)(1), 261(a)(3), 261(a)(2), and 207(a). (*Id.* at ¶ 22.) Petitioner
3  states that he served "around four years in prison." (*Id.* at ¶ 22.) Petitioner also served "additional
4  years in prison" for failing to register as a sex offender in Santa Clara County, around 2001. (*Id.*)

5  Though the exact date is unknown, Petitioner was taken into Immigration and Customs
6  Enforcement ("ICE") custody after his release from prison. (*Id.* at ¶ 23.) An Immigration Judge
7  ordered Petitioner removed to Thailand on February 26, 2004, based on his criminal convictions.
8  (*Id.*) Petitioner remained in ICE custody until he was released on an Order of Supervision
9  ("OSUP") on April 5, 2005. (*Id.* at ¶ 24.)

10  In 2010, Petitioner was sentenced to five years of probation and 180 days in county jail to
11  be served via electronic monitoring after pleading no contest to failing to register as a sex
12  offender, in violation of California Penal Code §§ 290(b) and 290.018(b), in Alameda County.
13  (*Id.* at ¶ 22.)

14  On August 29, 2025, Petitioner attended an ICE check-in appointment in San Francisco,
15  California. (*Id.* at ¶ 28.) An ICE officer instructed Petitioner to assist in obtaining a travel
16  document to Thailand. (*Id.*) Petitioner states he called the Thai embassy, but an embassy officer
17  told him that the government of Thailand would not issue him a travel document unless he could
18  prove Thai citizenship with a birth certificate or passport, which Petitioner does not have. (*Id.* at ¶
19  29.)

20  On October 14, 2025, Petitioner was detained after he arrived for another ICE check-in
21  appointment. (*Id.* at ¶ 31.) Upon re-detainment, Petitioner received a formal "Notice of
22  Revocation of Release," dated October 14, 2025, that stated Petitioner's "case is currently under
23  review by the Government of Thailand for the issuance of a travel document" and that his
24  "removal is not imminent." (*Id.* at ¶ 34.) Petitioner also received a Warrant for Arrest (Form I-
25  200), which stated he was being detained because ICE had probable cause to believe Petitioner is
26  removable from the United States. (*Id.* at ¶ 35.)

27  On October 16, 2025, Petitioner was transferred to Golden State Annex, a detention center
28  located in McFarland, California, where he remains detained. (*Id.* at ¶ 36.)

**B.     Procedural Background**

On December 18, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) In his petition, Petitioner brings the following claims: (1) violation of his procedural due process rights under the Fifth Amendment to the Constitution based on his re-detention; (2) violation of his substantive due process rights under the Fifth Amendment based on his re-detention; (3) violation of the Immigration and Nationality Act ("INA") and applicable regulations, including 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.4(l); and (4) unconstitutionally inadequate procedures regarding third country removal in violation of his due process rights under the Fifth Amendment and in violation of the Administrative Procedure Act ("APA"). (Doc. No. 1 at 15–22.)

Also on December 18, 2025, Petitioner filed the pending motion for a temporary restraining order. (Doc. No. 2.) In his motion, Petitioner seeks immediate release from immigration detention and an order preventing his re-detainment unless and until he is afforded a hearing before a neutral adjudicator. (Doc. No. 2-3 at 2.) Respondents filed their response to Petitioner's motion on December 22, 2025. (Doc. No. 5.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits

1  submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol
2  Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see
3  also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly
4  go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.
5  Supp. 3d 1177, 1185 (C.D. Cal. 2015).

## ANALYSIS

**A.     Likelihood of Success on the Merits**

      1.     <u>Statutory Framework</u>

Except in limited circumstances, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( . . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, there is no suggestion by Respondents that Petitioner's removal order became final recently such that Petitioner's removal period is presently ongoing. Rather, the record suggests Petitioner's removal order was final as of February 26, 2004. (Doc. No. 1-1 at 10.) Further, "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Where "an alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision . . . ." 8 U.S.C. 1231(a)(3); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."). Here, Petitioner was released from immigration custody on April 5, 2005, subject to OSUP conditions. (Doc. No. 1-1 at 10.) As a result, Petitioner is no longer subject to detention under § 1231(a)(2). The court therefore considers whether Petitioner's re-

4

detention in October 2025 is lawful under other statutory or regulatory provisions.

### 2. Lawfulness of Petitioner's Re-detention

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13." *Khamba v. Albarran*, No. 1:25-cv-01227-JLT-SKO, 2025 WL 2959276, at *7 (E.D. Cal. Oct. 17, 2025) (citation omitted). These regulations also govern the revocation of a noncitizen's release from custody. *See id.* The formal "Notice of Revocation of Release" indicates that here, Petitioner's OSUP was revoked pursuant to 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13, on account of changed circumstances such that Petitioner's case "is currently under review by the Government of Thailand for the issuance of a travel document . . . ." (Doc. No. 1-1 at 10.)

Under 8 C.F.R. § 241.13(i)(2), ICE is authorized to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3). Further, the revocation of a noncitizen's supervised release based on a finding of changed circumstances is reviewed in light of the factors set out in 8 C.F.R. § 241.13(f), which "instruct[] ICE on how it should make such a determination." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). The § 241.13(f) factors include but are not limited to:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature

5

> of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid."). In analyzing whether DHS followed the applicable regulations in detaining a noncitizen, other courts have found that "DHS's failure to follow its own procedural regulations may constitute a due process violation." *Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (citing *Zhu v. Genalo*, No. 1:25-cv-06523-JLR, 2025 WL 2452352, at *9 (S.D.N.Y. Aug. 26, 2025) ("The Government has significant discretion to enforce the immigration laws and, indeed, to revoke Petitioner's Order of Supervision . . . [b]ut it must do so consistent with the requirements of its own regulations and the Due Process Clause.")).

Here, Petitioner has demonstrated he is likely to succeed on his claim that ICE did not comply with the applicable regulations under 8 C.F.R. § 241.13(i) when revoking Petitioner's release. First, to revoke a removable noncitizen's release under § 241.13(i)(2), ICE must determine that "on account of changed circumstances," the noncitizen is likely to be removed in the foreseeable future. 8 C.F.R. § 241.13(i)(2). The Notice of Revocation of Release served on Petitioner states that Petitioner's "case is currently under review by the Government of Thailand for the issuance of a travel document" and that Petitioner's "removal is not imminent." (Doc. No. 1-1 at 10.) Even if ICE assessed the likelihood of Petitioner's removal before revoking his release, the re-detention could not have been "on account of" changed circumstances, given that Respondents concede that no travel document for Petitioner has been obtained, only asserting that Enforcement and Removal Operations ("ERO") "is currently working on obtaining a travel

6

1  document to Thailand." (Doc. No. 5 at 2); *see Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM,
2  2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (explaining that ICE's determination
3  regarding the foreseeability of removability must be "made before the removable alien has had
4  his release revoked"). Further, Petitioner states he was asked by a deportation office to fill out a
5  travel document on December 8, 2025, approximately six weeks after he was re-detained. (Doc.
6  No. 1 at ¶ 38); *see Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D.
7  Cal. Nov. 14, 2025) (finding no evidence of changed circumstances where the government "did
8  not even submit a request to Vietnam for travel documents" until a month after re-detaining
9  petitioner); *Sphabmixay v. Noem*, No. 25-cv-2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal.
10 Oct. 30, 2025) (finding no evidence of changed circumstances where the government "did not
11 even submit a request to Laos for travel documents" until a week after re-detaining petitioner).
12 The limited record before the court does not show that a changed circumstances determination
13 was made at or before the Petitioner's re-detention on October 14, 2025. *See Sun v. Noem*, No.
14 3:25-cv-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) ("ICE's own
15 regulations thus place the burden on ICE to show changed circumstances that make removal
16 significantly likely in the reasonably foreseeable future."). Petitioner has therefore shown that
17 ICE likely violated its own rule under § 241.13(i)(2), given the lack of any evidence of a changed
18 circumstance prior to Petitioner's re-detainment.

19       Second, while it appears from the Notice of Revocation of Release, dated October 14,
20 2025, that Petitioner did receive notice of the reasons why he was re-detained, Petitioner asserts
21 that he has not been provided with the "prompt interview" as required by both § 241.13(i)(3) and
22 § 241.4(l)(1) since his re-detainment two months ago. (Doc. No. 1 at ¶ 9.) Indeed, on the current
23 record before the court, there is no evidence to suggest Petitioner has received the required
24 interview, which would provide him with an opportunity to respond to the reasons for his re-
25 detainment. Instead, Respondents assert that Petitioner has failed to "provide any evidence or
26 details regarding the informal interview pursuant to § 241.13(i)." (Doc. No. 5 at 2.) Notably,
27 Respondents do not assert that Petitioner did receive the interview he is entitled to, nor do they
28 provide any evidence documenting that an interview did in fact occur. *Cf. J.R.M.J. v. Wofford*,

7

1  No. 1:25-cv-01567-DC-SCR, 2025 WL 3295593, at *5 (E.D. Cal. Nov. 26, 2025) (finding that
2  petitioner had not shown ICE failed to comply with the requirement to provide petitioner with a
3  prompt interview where petitioner signed a document memorializing that interview). Therefore,
4  Petitioner has demonstrated he is likely to succeed on the merits of his claim that ICE violated the
5  applicable regulations because ICE likely failed to provide a "prompt interview" pursuant to
6  § 241.13(i) and § 241.4(l).

**B.    Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.    Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation marks omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a

constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it ultimately demonstrates" that detention is necessary to effectuate removal. *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *13 (N.D. Cal. Sept. 26, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025)). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). The court finds that the balance of equities and public interest weigh in favor of granting Petitioner's requested injunctive relief. Therefore, all four *Winter* factors weigh in favor of granting Petitioner's motion for a temporary restraining order.

**D.     Bond**

A district court may grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.*

The parties do not address whether the imposition of a security bond is warranted. The court finds that no security bond is required here, given that courts regularly waive a security bond in similar cases and that Respondents have not established the need to impose a security

bond in this case. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above:

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

    a. Respondents are ORDERED to immediately release Petitioner from Respondents' custody; and

    b. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.4(l);

2. Respondents are ORDERED TO SHOW CAUSE no later than **December 30, 2025**, as to why this court should not issue a preliminary injunction on the same terms as this Order. Petitioner may file a response thereto by no later than **December 31, 2025**. Respondents may file a reply to Petitioner's response by no later than **January 5, 2026**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated:   **December 23, 2025**

Dena Coggins
United States District Judge

10